Oxford Development Corp., et al. [1] v. Commissioner. Oxford Development Corp. v. Commissioner
Docket Nos. 71237, 90632 - 90642, 92239 - 92253.
United States Tax Court
T.C. Memo 1964-182; 1964 Tax Ct. Memo LEXIS 158; 23 T.C.M. (CCH) 1085; T.C.M. (RIA) 64182; June 30, 1964
*158 Petitioner-corporations, all controlled by Alfred L. Kaskel, made bona fide mortgage loans and in connection with these loans made interest payments, mortgage bonus payments and certain other related expenditures (primarily legal and brokerage fees). The net proceeds of the loans were not used in the trade or business of the particular petitioner in whose name the loan was outstanding. Instead, the proceeds were used to finance other real estate activities planned by Kaskel unconnected with any of the petitioners. Held, petitioners are entitled to deduct the interest payments and mortgage bonus payments incurred in connection with these mortgage loans. Held, further, petitioners are not entitled to deduct the other loan expenses (mainly legal and brokerage fees) since they were not incurred in connection with any trade or business carried on by the petitioners. Michael Kaminsky, 122 E. 42nd St., New York, N. Y., and Hyman Wolfson, for the petitioners. R. P. Hertzog, for the respondent. MULRONEY Memorandum Opinion MULRONEY, Judge: Respondent determined the following deficiencies in income tax: Docket No.
Petitioner
Year
Deficiency
71237
Oxford Development Corp.
1947
$ 3,140.09
1948
3,703.09
1949
5,654.17
1950
5,434.92
90632
Stone Boulevard Corp.
1954
3,701.19
1955
3,555.19
90633
Crystal Hall, Inc.
1954
6,879.11
1955
6,924.29
90634
Yellowstone Apartments, Inc.
1954
2,148.22
1955
468.28
90635
Oxford Development Corp.
1951
6,762.72
1952
6,110.73
1953
5,676.91
90636
Princeton Operating Corp.
1954
3,110.61
1955
3,154.58
90637
Berkeley Apts., Inc.
1954
3,000.54
1955
3,060.12
90638
Berkeley Gardens, Inc.
1955
4,578.10
90639
Cornell Development Corp.
1954
2,199.00
1955
4,564.12
90640
Regency Park, Inc.
1954
8,227.85
1955
5,000.11
90641
108th Street Apartments, Inc.
1952
1,170.03
1954
4,885.18
1955
6,521.27
90642
Forest Hills Apts., Inc.
1954
5,955.29
1955
8,138.86
92239
Seventy Realty Corporation
1956
8,273.94
1957
6,717.42
1958
15,345.21
92240
Princeton Operating Corp.
1956
3,021.49
1957
4,457.24
1958
1,469.84
92241
Stone Boulevard Corp.
1956
1,623.11
92242
Regency Park, Inc.
1957
239.45
92243
Oxford Development Corp.
1956
1,421.90
1957
3,526.45
92244
Howard Development Corp.
1956
1,814.39
1957
887.84
1958
987.23
92245
Greenwich Residences, Inc.
1956
2,705.90
1957
3,815.19
1958
1,873.04
92246
230 Park Place, Inc.
1957
7,280.21
92247
Anita Management Corp.
1956
1,187.00
1957
819.93
1958
365.99
92248
Berkley Apts., Inc.
1956
1,457.44
1957
2,130.16
92249
Berkeley Gardens, Inc.
1956
4,555.65
1957
3,856.25
92250
Cambridge Development Corp.
1956
3,604.56
1957
3,765.55
1958
1,463.24
92251
Berkeley Hall, Inc.
1956
1,030.34
1957
2,333.84
92252
Cornell Development Corp.
1956
3,090.39
1957
1,882.27
92253
Crystal Hall, Inc.
1956
11,390.26
1957
13,663.37
1958
11,238.11
*161 The issues in these consolidated cases are (1) whether petitioners are entitled to deduct as interest the payments made by them in connection with certain loans; (2) whether petitioners are entitled to deduct as ordinary and necessary business expenses certain costs incident to such loans; and (3) whether petitioners incurred net operating losses during the years before us which would entitle them to net operating loss deductions. The last issue, involving the net operating loss deductions, will be determined by our holdings on the other two issues. All of the facts were stipulated and they are so found. Petitioners are corporations organized under the laws of the State of New York. They filed income tax returns for the years here in issue with the district director of internal revenue, Brooklyn, New York. Each of the petitioners is a real estate corporation holding title to one or more rental properties and derives income primarily from the rental of apartments and rental properties. The certificate ef incorporation of each petitioner, among the gencial powers enabling it to engage in various endeavors involving real estate, authorizes the corporation "[to] borrow money with *162 or without pledge of, or mortgage on, all or any of its property, real or personal as security, and to loan and advance money upon mortgages on real and personal property or on either of them." During the years here involved, all of the outstanding capital stock of the petitioners and of Carol Management Corp. (hereinafter called Carol), was owned by Alfred L. Kaskel, who was president of the aforesaid corporations. Carol performed services as sole management agent for the properties owned by the petitioners and also for several other corporations (hereinafter called the "other corporations") not involved in these proceedings. The stock of the "other corporations" was owned by Kaskel individually or by another corporation wholly owned by Kaskel. All funds normally received in the business of the petitioners and of the "other corporations" were deposited in the bank account of Carol. Separate books and records were maintained by Carol for each petitioner and for the "other corporation". Carol deposited all funds received from the petitioners and the "other corporations" in its bank account without earmarking the funds. Intercompany accounts receivable and payable were maintained *163 to reflect the reciprocal accounts of the various corporations with Carol and with Kaskel. Petitioners' disbursements were paid by Carol through its bank account. During the years here involved the petitioners obtained loans in their names, and the net proceeds from the loans were usually deposited in Carol's bank account. The loans were in substantial amounts, and many of the petitioners obtained more than one loan during the years before us. In some instances a bank account was opened by the petitioner-corporation in whose name the loan was made for the limited purpose of transferring the net proceeds of the loan to Carol's bank account, or the net proceeds of the loan were transferred to Kaskel. Generally, the indebtedness was recorded on the books and records of the petitioner-corporation in whose name the loan was made. The books and records of Carol reflected the intercompany relationships arising from the receipt of the loan proceeds. The loans herein involved were bona fide loans resulting from arm's-length transactions with third parties. Interest payments on the loans and the legal expenses here involved in connection with these loans were paid by the makers of the loan *164 notes. Negotiations for these loans were instigated by Kaskel. The negotiations were commenced when money was needed for new construction planned by Kaskel, or planned through Carol or the Doral Construction Corporation (a construction corporation wholly owned by Kaskel), or for repayment of loans secured by mortgages on one or more of the properties of the petitioners or the "other corporations". Most of the loans here involved followed the same general pattern. When a lender was found he would select a property as collateral from the various properties of the petitioner-corporations and the "other corporations" which were available for use as collateral. The loans were secured by junior liens placed on the properties owned by the petitioner-corporations in whose names the loans were made. The petitioner-corporation furnishing the collateral would execute a mortgage and a mortgage note providing for fixed rates of interest and for repayment of the loan in fixed installments. A certificate of stockholders' consent to the mortgage and an affidavit of good title executed by Kaskel would also be prepared in connection with the loans. In connection with some of the loans, Kaskel would *165 also execute a collateral bond as additional security. It is stipulated that the net proceeds of the loans here involved, or the excess proceeds obtained through the refinancing of the existing loans, were not used in the trade or business of the petitioner in whose name the loan was outstanding. During the years here involved Kaskel obtained funds from Carol, whose books reflected balances due from Kaskel as follows: Date
Amount
Dec. 31, 1947
$ 783,991.14
Dec. 31, 1948
917,439.75
Dec. 31, 1949
1,123,993.27
Dec. 31, 1950
2,600,922.98
Dec. 31, 1951
3,435,839.26
Dec. 31, 1952
5,623,018.01
Dec. 31, 1953
6,363,049.77
Dec. 31, 1954
5,824,358.65
Dec. 31, 1955
4,979,298.88
Dec. 31, 1956
4,261,765.07
Dec. 31, 1957
4,527,360.52
Dec. 31, 1958
4,923,476.87 Kaskel used the funds received from Carol either as investments in other real estate corporations owned by him or loans to other real estate corporations owned by him (including some of the petitioner-corporations), and some portion of the funds was used for personal living expenses. None of the intercompany receivables and payables, or receivables and payables between Kaskel, petitioners or Carol *166 and the other corporations involved interest charges or were evidenced by notes or other evidences of indebtedness, nor were dates fixed or agreed upon for repayment. Some of the loans here involved were to be repaid in their face amount, but the amount received from the lender was reduced by an amount designated as a mortgage bonus. Petitioners also incurred certain expenses, primarily attorney and brokerage fees, in connection with the loans here involved. The mortgage bonuses were amortized by petitioners over the terms of the obligations. Petitioners claimed deductions for interest, including the mortgage bonus paid on the various loans, and also claimed deductions for the loan expenses incurred during the years here involved. Respondent disallowed these deductions. Petitioners concede the correctness of all the adjustments set forth in the respondent's statutory notices of deficiencies except those pertaining to the interest, mortgage bonus, and legal expenses in connection with the loans involved and operating loss deductions claimed by the various petitioners on their returns. In view of the fact that this is a fully stipulated case, it will not be necessary to recite *167 the somewhat numerous items and amounts disallowed under the issues now before us. We have held in L-R Heat Treating Co., 28 T.C. 894, that a premium or a bonus paid to obtain a loan comes within the definition of interest. Consequently, we shall treat together the issues of the deductibility of interest payments and mortgage bonus payments made by the several petitioners in the years here involved. Respondent argues that the several petitioner-corporations executed the various mortgage notes as makers merely to accommodate Kaskel or a corporation whollyowned by Kaskel; that these acts of accommodation were ultra vires on the part of the petitioner-corporations; that because of the ultra vires natures of the transactions the various mortgage notes (and presumably the mortgages as well) were invalid and "the petitioners were not primarily liable on the notes or evidences of indebtedness but stood in a position similar to that of a surety"; that "the indebtedness was not theirs but that of their principals, with whom or which, as the case might be, the ultimate liability rested"; *168 and, consequently, that the petitioner-corporations are not entitled to deduct the interest arising from another person's indebtedness. At the outset, we do not believe that it is proper to question whether or not the making of the corporate loans in question were ultra vires, Cooper-Brannan Naval Stores Co., 9 B.T.A. 105; see also Olean Times Publishing Co., 42 B.T.A. 1277. Moreover, it is questionable whether respondent is in a position to use such a doctrine to invalidate, for tax purposes, the acts of a corporate taxpayer. In Syracuse Savings Bank v. Yorkshire Ins. Co., 301 N. Y. 403, 94 N.E. 2d 73 (1950), the Court of Appeals of New York said that the "doctrine of ultra vires has been developed for the benefit and protection of stockholders and directors or contracting parties and not for disinterested third parties", and that "[only] the State may collaterally take cognizance of corporate malfeasance." Both section 23(b) of the Internal Revenue Code of 1939 and section 163 of the Internal Revenue Code of 1954 allow, *169 in clear and explicit terms, the deduction of all interest paid or accrued within the taxable year on indebtedness. Congress has specifically included in both Codes certain exceptions to this broad rule. [2] It would appear that, with these statutory exceptions, any payment of interest within the taxable year on a genuine indebtedness of any kind of the taxpayer is deductible. It is abundantly clear that the petitioner-corporations were the makers of the various mortgage notes during the years before us; that they used corporate assets as security for the loans; that they actually made the interest and mortgage bonus payments; that a genuine indebtedness existed in all instances; and that it was the indebtedness of the petitioner-corporations. There is nothing in the record to suggest that the petitioner-corporations, in obtaining these loans, were acting in any agency capacity. Respondent's real argument, stripped of all its embellishments, seems to be that if the proceeds of a loan are not used by the borrower for his own purposes, *170 then the interest deduction on such loans must be denied. The statutory provisions clearly do not call for any such destination-of-funds test. Moreover, a similar argument was rejected by this Court in Arcade Realty Co., 35 T.C. 256, where respondent sought to deny the interest deduction claimed by the corporate taxpayer on the ground that the loans there involved were actually made to and for the benefit of a stockholder who, together with his wife's estate, owned all of the corporate taxpayer's stock. In holding against the respondent we stated that the "facts of record show that the loans involved were made to [taxpayer], in its corporate capacity, using corporate assets as security for the borrowed funds" and that simply because "these funds in turn were loaned to [the controlling stockholder] does not, in our view, vitiate the deduction of interest by [the taxpayer]." Similarly, this Court said in Joseph H. Bridges, 39 T.C. 1064, affd. 325 F. 2d 180, that section 163(a) of the Internal Revenue Code of 1954 "says *171 nothing about the motive or purpose for incurring the indebtedness and paying the interest and, except as provided in sections 264-267, which are not pertinent here, makes no requirement with respect to the use to which the borrowed money is put." If respondent is making an argument that the petitioner-corporations are not primarily liable on these mortgage loans (and therefore not entitled to deduct interest payments on another person's indebtedness) because they executed these loans as accommodation makers, we must reject the argument. It is far from certain that the petitioner-corporations, as respondent urges, were accommodation makers under New York law. Section 55 of the New York Negotiable Instruments Law provides as follows: § 55. Liability of accommodation party An accommodation party is one who has signed the instrument as maker, drawer, acceptor or indorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument *172 knew him to be only an accommodation party. It is clear that the various petitioner-corporations were actually credited with the proceeds of the loans here involved, and the fact that such proceeds were then put at the disposal of other corporations controlled by Kaskel cannot mean that the petitioner-corporations did not receive "value" within the meaning of the New York statute. However, even if we should regard the petitioner-corporations as accommodation makers under the New York statute, it would still avail the respondent nothing, since it is evident under both the State statute and the case law that an accommodation party is the primary obligor. McGoldrick v. Family Finance Corporation, 287 N. Y. 535, 41 N.E. 2d 86 (1942). See also 11 C. J. Secundum, sec. 739(b). In other words, the indebtedness in each instance was that of the petitioner-corporation executing the loan. We hold that the petitioner-corporations are entitled to deductions for the interest and mortgage bonus payments made by them during the years here involved. The next issue is whether the petitioner-corporations *173 are entitled to deductions for certain expenses, consisting primarily of legal fees and brokerage fees, which were incurred in connection with the various mortgage loans. Unlike the interest and mortgage payments involved in the above issue, the loan expenses, in order to be deductible, must be ordinary and necessary expenses incurred in carrying on the petitioner-corporations' trade or business. Section 23(a)(1)(A) of the Internal Revenue Code of 1939; section 162(a) of the Internal Revenue Code of 1954. It is difficult to see how the petitioner-corporations can prevail on this issue in the face of a stipulation that the "net proceeds of the loans, or the excess proceeds obtained through the refinancing of the existing loans, were not used in the trade or business of the petitioner in whose name the loan was outstanding." Loans were negotiated by Kaskel whenever money was needed either for new construction planned by him or through a corporation controlled by him. He owned all of the stock of the petitioner-corporations and freely used their real estate assets as *174 collateral for such loans, most of which loans were placed in a central bank account. It is axiomatic that, to be deductible under the statute, the expense must be incurred in a taxpayer's own trade or business, not that of another. Interstate Transit Lines v. Commissioner, 319 U.S. 590; South American Gold & Platinum Co., 8 T.C. 1297, affd. 168 F. 2d 71. Petitioner-corporations, in attempting to show that the loan expenses were made to further business ends within the meaning of the statute, argue on brief that they are all units of a large real property-owning "complex" in which combined resources are available for the growth as well as the economic well-being of the entire group. It is stated on brief that the "petitioners * * * believe that they gain from a united front, that they were created by reason of the close association of corporations of which they are units, that they can meet their daily and longterm needs more adequately by the form of association which they have developed." It is apparent that petitioners are blurring, if not *175 completely ignoring, the tax identity of separate corporations. Moline Properties, Inc. v. Commissioner, 319 U.S. 436. It may be true that Kaskel, who controls all of the corporations in this real estate group, views the economic well-being of the group as a whole. But for tax purposes each individual corporation has its own separate identity. It can deduct only those expenses which are made to further its own trade or business, not the collective trade or business of a complex of corporations which happens to be controlled by one person. All of the petitioner-corporations are real estate corporations holding title to one or more rental apartment properties. They derive income primarily from the rental of apartments and commercial properties. They made mortgage loans to help finance the activities of Kaskel. The expenses incurred and paid in the making of such loans that were not to benefit the borrowers would not be deductible as ordinary and necessary expenses of carrying on the borrowers' trade or business under section 23(a)(1)(A), I.R.C. of 1939, and section 163, I.R.C. of 1954. We sustain the respondent on this issue. It is our understanding *176 that the third issue, involving net operating loss deductions claimed by the various petitioners on their returns, will turn upon our decision on the issues discussed above. This may be reflected by the parties in the Rule 50 computations. Decisions will be entered under Rule 50. Footnotes
1. The following proceedings are consolidated herewith: Stone Boulevard Corp., Docket No. 90632; Crystal Hall, Inc., Docket No. 90633; Yellowstone Apartments, Inc., Docket No. 90634; Oxford Development Corp., Docket No. 90635; Princeton Operating Corp., Docket No. 90636; Berkeley Apts., Inc., Docket No. 90637; Berkeley Gardens, Inc., Docket No. 90638; Cornell Development Corp., Docket No. 90639; Regency Park, Inc., Docket No. 90640; 108th Street Apartments, Inc., Docket No. 90641; Forest Hills Apts., Inc., Docket No. 90642; Seventy Realty Corporation, Docket No. 92239; Princeton Operating Corp., Docket No. 92240; Stone Boulevard Corp., Docket No. 92241; Regency Park, Inc., Docket No. 92242; Oxford Development Corp., Docket No. 92243; Howard Development Corp., Docket No. 92244; Greenwich Residences, Inc., Docket No. 92245; 230 Park Place, Inc., Docket No. 92246; Anita Management Corp., Docket No. 92247; Berkeley Apts., Inc., Docket No. 92248; Berkeley Gardens, Inc., Docket No. 92249; Cambridge Development Corp., Docket No. 92250; Berkeley Hall, Inc., Docket No. 92251; Cornell Development Corp., Docket No. 92252 and Crystal Hall, Inc., Docket No. 92253.↩
2. See section 23(b) of the Internal Revenue Code of 1939, and sections 264- 267 of the Internal Revenue Code of 1954↩.